UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LI-HUA OLIVIA HO, | ) | |
| | ) | |
| Plaintiff, | ) | No. 11 C 09257 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| ABBOTT LABORATORIES, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Li-Hua Olivia Ho brought this lawsuit *pro se* against Defendant Abbott Laboratories, alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[1] In her Second Amended Complaint,[2] Ho alleges that she was subjected to harassment by her supervisor, and eventually fired, because of her race (Asian) and age (over forty). R. 32, Second Am. Compl. ¶¶ 27, 29-30. She also alleges violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*; § 510 of the Employee Retirement Security Act of 1974 (ERISA), 29 U.S.C. § 1140; and state-law claims of defamation and promissory estoppel. Second Am. Compl. at 1. Abbott moves to partially dismiss the complaint

---

[1]The Court has subject matter jurisdiction under 28 U.S.C. § 1331, and supplemental jurisdiction over Ho's state-law claims under 28 U.S.C. § 1367.

[2]Although the complaint is entitled "Third Amended Complaint," it is really the Second Amended Complaint. *See* R. 38.

pursuant to Federal Rule of Civil Procedure 12(b)(6) [R. 25, R. 36].[3] For the reasons that follow, the motion is granted in part and denied in part.

## I. Background

In evaluating this motion to dismiss, the Court accepts as true the complaint's factual allegations and draws reasonable inferences in the plaintiff's favor. *Ashcroft v. al-Kidd*, — U.S. —, 131 S. Ct. 2074, 2079 (2011). In June 1996, Ho began working at Abbott as a Technician. Second Am. Compl. ¶ 14. Over the next 12 years, she worked her way up the ranks and eventually became a Laboratory Quality Engineer of Global Pharmaceutical Operations in Abbott's Global Pharmaceutical Research and Development division. *Id.* But from September 2007 until August 2008, she was allegedly subjected to "systematic and hostile harassment" by her supervisor, Suzette Pelletier. *Id.* ¶ 15. This alleged harassment consisted of unwarranted criticism, unjustified blame, exclusion from meetings and emails, and a public suspension of her professional review-and-approval privileges. *Id.* Moreover, Pelletier falsely accused Ho of performance problems in order to justify giving her written warnings and requiring her to comply with a "Coaching and Counseling Plan." *Id.* ¶ 19. Even though Ho reported this harassment to higher-ups in her division and in Abbott's Human Resources department, the harassment continued. *Id.* ¶¶ 15(d)-(e), 17.

---

[3]Although Abbott originally filed a motion to dismiss as R. 25, Ho did not respond to that motion but instead amended her complaint. Abbott then filed, as R. 36, a motion to strike the newly amended complaint or dismiss with prejudice. The Court denied the motion in part as to striking the amended complaint, but ordered briefing on the part of the motion seeking dismissal of Ho's RICO, ERISA, defamation, and promissory estoppel claims. R. 38.

While this harassment was ongoing, Ho began actively seeking internal transfer opportunities. In 2008, she had two rounds of onsite interviews for an opening in Abbott's Diabetes Care division in Alameda, California. *Id.* ¶ 18. Also in 2008, she interviewed to transfer to Abbott's Vascular division. *Id.* ¶ 36. However, nine days after that interview, Ho was fired by Pelletier on August 28, 2008. *Id.* ¶¶ 37-38. Ho claims that the reasons cited to her during her termination—her inability to follow standard operating procedures and pass something called Batch Record Review testing—was pretext for Pelletier's harassment, which was allegedly motivated by Ho's race and age. *Id.* ¶¶ 19, 27.

In her complaint, Ho brings five claims. Her core claims of Title VII race and age discrimination are contained in Counts Two and Three. In those counts, she alleges that she was discriminated against on the basis of race because Pelletier noted in Ho's personnel file that "Olivia was planning some Asian class action suit against Abbott." *Id.* ¶ 27. Moreover, Ho claims that younger white colleagues, who had less experience and were less qualified than Ho, were promoted to be group leaders, while half of the employees over 40 years old in her department were demoted, discharged, or forced into early retirement. *Id.* ¶¶ 31-32. Specifically, she alleges that after her discharge, her vacant position was filled by a white male employee in his early thirties. *Id.* ¶ 33.

She also brings four other claims, and these are the targets of Abbott's current motion to dismiss. She first alleges a RICO violation (not in any freestanding, numbered count), claiming that multiple Abbott and Equal Employment Opportunity Commission (EEOC) officers colluded to violate her equal employment rights and

3

concoct a fictitious investigation into her employment discrimination claims. *Id.* at 3-5. Next, in Count One, she alleges that Abbott violated ERISA § 510 by terminating her to prevent her from receiving retirement and severance benefits. *Id.* at 11-12. In Count Five, she claims that Abbott employees defamed her to the recruiter for the Abbott Vascular position, as well as to corporate security guards. *Id.* at 16-17. Finally, she alleges promissory estoppel (but also not in any freestanding, numbered count). *Id.* at 1. Abbott moves to dismiss these four claims.

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at

4

570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Significantly, the only allegations that are entitled to the assumption of truth are those that are *factual* allegations, rather than mere legal conclusions or formulaic assertions of elements of the asserted claim. *Iqbal*, 556 U.S. at 678-79.

## III. Analysis

Abbott moves to dismiss Ho's RICO, ERISA, defamation, and promissory estoppel claims. As discussed below, Abbott's motion is granted in most part.

### A. RICO

Ho's RICO claim alleges that Abbott and the EEOC violated 18 U.S.C. § 1962(b), (c), and (d). Second Am. Compl. ¶ 7. Section 1962(b) makes it illegal for "any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b). And under § 1962(c), it is unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Finally, § 1962(d) prohibits a conspiracy to violate any other RICO provision. 18 U.S.C. § 1962(d). So all three RICO provisions require Ho to plausibly plead, at the very least, that Abbott and the EEOC formed an "enterprise" that engaged in a "pattern of

5

racketeering activity." *See* 18 U.S.C. § 1962(b)-(d); *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 600 (7th Cir. 2001) (laying out the elements of a RICO conspiracy).

To have engaged in a "pattern of racketeering activity," Abbott must have committed "at least two acts of racketeering activity" within ten years of each other. 18 U.S.C. § 1961(5); *DeGuelle v. Camilli*, 664 F.3d 192, 199 (7th Cir. 2011). And "racketeering activity" is limited to the specific criminal acts set out in 18 U.S.C. § 1961(1). *DeGuelle*, 664 F.3d at 199. Those criminal acts do not include any of the alleged wrongdoing that Ho complains about. She alleges that multiple officers at Abbott, including its chairman and CEO, conspired with EEOC employees to perform a fake investigation into her discrimination claim. Second Am. Compl. ¶¶ 8-9. According to Ho, even though she appealed her firing up Abbott's chain of command, its employees allegedly failed to stop the discrimination and to seriously consider her appeal (despite three rounds of review). *Id.* ¶ 9(a). Additionally, EEOC employees allegedly did not investigate her discrimination claim, and created a case file consisting of "two identical sets of file documents assigned with two different file numbers." *Id.* ¶ 9(b). Finally, in her response brief, Ho alleges that the EEOC forged her case file and case documents, and that Abbott covered up for Pelletier by submitting a false "Position Statement" to the EEOC. R. 40, Pl.'s Resp. at 2-4. Although these facts allege some sort of collusion between Abbott and the EEOC, none of them plausibly plead a RICO predicate act as defined by the statute. *See* 18 U.S.C. § 1961(1). On the facts alleged, it is not plausible that the EEOC engaged in criminal acts, going so far as conducting a fake investigation, in order to assist Abbott in a conspiracy to target Ho.

6

The Court understands why Ho disagrees with the position that Abbott took during the EEOC investigation, and understands why she disagrees with the EEOC's conclusion in the investigation, but she has not plausibly pled a single racketeering activity, much less a pattern.

Ho's complaint also does not plausibly plead that Abbott and the EEOC formed an "enterprise." Although a RICO enterprise may be a "union or group of individuals associated in fact although not a legal entity," 18 U.S.C. § 1961(4), "some type of organizational structure is required." *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000) (citations omitted). It is true that an enterprise's structure may be inferred from evidence that an association-in-fact engaged in a pattern of racketeering activity, but the enterprise's structure is a distinct element of a RICO claim. *Boyle v. United States*, 556 U.S. 938, 947 (2009). Ho has not explained how this combined Abbott-EEOC enterprise is structured. Her RICO claims thus suffer from this additional deficiency. There is no plausible RICO claim here, and that claim is dismissed with prejudice.

## B. ERISA § 510

Ho next alleges that Abbott discharged her in violation of ERISA § 510, which makes it illegal "to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under [a benefit] plan." 29 U.S.C. § 1140. Ho can try pleading a violation of ERISA § 510 directly or indirectly. *Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 796 (7th Cir. 2005). Because Ho does not allege

7

that she has direct or circumstantial evidence that Abbott fired her for the purpose of depriving her of benefits, *see* Second Am. Compl. ¶¶ 21-25, she must proceed indirectly. *See Isbell,* 418 F.3d at 796.

Under the indirect method, Ho can establish a *prima facie* case by pleading that (1) she was a member of an ERISA plan, (2) she was qualified for the position, and (3) she was discharged under circumstances that provide some basis for believing that Abbott intended to deprive her of benefits. *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 943 (7th Cir. 2007) (citing *Grottkau v. Sky Climber, Inc.*, 79 F.3d 70, 73 (7th Cir. 1996)). In other words, "[t]o prove a violation of section 510, plaintiffs must establish more than a loss of benefits; they must demonstrate that their employers terminated them with the specific intent of preventing or retaliating for the use of benefits." *Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 295 (7th Cir. 1998). Otherwise, "no action lies where the alleged loss of rights is a mere consequence, as opposed to a motivating factor behind the termination." *Meredith v. Navistar Int'l Transp. Corp.*, 935 F.2d 124, 127 (7th Cir. 1991) (internal quotation mark and citations omitted).

The only disputed element is whether Abbott acted with the required intent to prevent her from using ERISA benefits. Ho advances three theories to demonstrate that it did. First, she claims that she was fired in the middle of transferring to the Abbott Vascular division; had she stayed at Abbott Vascular until retirement, she would have been entitled to full pension benefits. Second Am. Compl. ¶ 22. But this theory alleges that she was fired because she would have received a full pension *if* she remained at Abbott Vascular until retirement. Abbott could not have known whether

she would have been eligible for a pension at Abbott Vascular at the time it fired her, so it could not have fired her with the specific intent of preventing her from receiving that pension.

Second, Ho claims that during her discharge appeal, Abbott knew, but failed to inform her, that COBRA would not offer her medical benefits. *See* Second Am. Compl. ¶¶ 24-25. It is unclear exactly what Abbott's motivation for firing her would be under this theory. Read as broadly as possible, perhaps she alleges that Abbott fired her to avoid paying her medical benefits. But that charitable reading is also implausible: she pleads that Abbott knew that COBRA would not offer her benefits "even after the initial appeal," but not necessarily *at the time* that it decided to fire her. *Id.* ¶ 25. Without at least that temporal link, she has not plausibly alleged that any denial of COBRA benefits (even assuming that Abbott had to pay them) motivated her termination.

Her third and final theory is also implausible, but there is at least a chance that she could successfully replead it. She alleges that soon after she was fired, Abbott laid off 30% of the employees in her department. *Id.* ¶ 23. But-for her pretextual termination, she would likely have been laid off as well and would have received a similar severance package (worth about $90,000). *Id.* A severance package is an "employee welfare benefit plan" governed by ERISA § 510. *See Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 789 (7th Cir. 1996); *Kreutzer v. A.O. Smith Corp.*, 951 F.2d 739, 743 (7th Cir. 1991). So for this claim to survive, Ho must plead facts plausibly alleging that Abbott had already selected her to be laid off (and thus would

9

have been eligible for the severance package) but fired her ahead of time to avoid paying her severance. *See Anglin v. Sears, Roebuck & Co.*, 2004 WL 1197355, at *14 (N.D. Ill. May 28, 2004) (to prevail on summary judgment, plaintiff must "show that management had either already selected him to be a [reduction-in-force] participant or that management intended in the future to select him."). But the only supporting fact is that those laid off had a similar "job title & seniority," and even Ho suggests that fact is more relevant to the *amount* of severance she would have received than *whether* she would have received severance. *See* Second Am. Compl. ¶ 23. Without facts indicating that she had been selected for the layoff (and would have been given severance), all she can rely upon is a 30% probability of selection had Abbott not acted with the prohibited intent to interfere with her benefits. And that statistic alone is too implausible, without more, to state an ERISA § 510 claim, so this theory fails as well.[4]

Accordingly, the ERISA claim is dismissed. But because Ho could conceivably allege sufficient facts on the severance-package theory with more facts in discovery (particularly facts that supplement the likelihood that she would have been laid off but-for her termination), the dismissal shall be without prejudice. In engaging in discovery on why she was fired, Ho may seek discovery (subject to the magistrate

---

[4]To the extent that she also contends, in her response brief, that she was fired because she had been fully eligible for Abbott retirement benefits, *see* Pl.'s Resp. at 5, that argument also fails. By her own admission, she had *already* been eligible for retirement benefits for about two years before her termination. *Id.* So it is implausible that she had been terminated in 2008 because of benefits that vested in 2006—if Abbott had the specific intent to prevent her from receiving retirement benefits, it would have fired her shortly before the benefits vested in 2006.

judge's supervision of discovery) on whether she would have been one of the 30% (if that is even true) of employees who were laid off and received the severance package.

### C. Defamation

Third, Ho alleges that Abbott's employees made defamatory statements about her to others. "To state a defamation claim, a plaintiff must present facts showing that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009) (citation omitted). A defamatory remark is "published" when it is communicated to someone other than the plaintiff. *Morris v. Harvey Cycle & Camper, Inc.*, 911 N.E.2d 1049, 1054 (Ill. App. Ct. 2009) (citation omitted). And a statement is considered defamatory "if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him." *Kolegas v. Heftel Broadcasting Corp.*, 607 N.E.2d 201, 206 (Ill. 1992) (citing Restatement (Second) of Torts § 559 (1977)).

Ho alleges that she was defamed in two separate incidents following her termination. The first incident involved the Abbott Vascular job that Ho applied for. In September 2008, Christi Lehner (an Abbott HR employee) told the Abbott Vascular recruiter that Ho was "no longer with the company due to a company initiated termination and our typical company position for company initiated terminations is to code as not eligible for rehire." Second Am. Compl. ¶ 39(d) (internal quotation mark

11

omitted). Ho contends that this defamatory communication "damaged [her] reputation and marketability" by preventing her from being hired at Abbott Vascular. *Id.* ¶ 39.

The problem with this argument is that the first part of Lehner's statement was true: by her own admission, Ho *was* discharged due to a company-initiated termination. Second Am. Compl. ¶ 37 ("On August 28, 2008, Ho was discharged by Supervisor Suzette Pelletier without giving her any reason of termination."). And "[o]ne who publishes a defamatory statement of fact is not subject to liability for defamation if the statement is true." *Wynne v. Loyola Univ. of Chicago*, 741 N.E.2d 669, 676 (Ill. App. Ct. 2000) (citation omitted). Indeed, even statements that are only "substantial[ly]" true are not defamatory. *Id.*; *see also Cianci v. Pettibone Corp.*, 698 N.E.2d 674, 678 (Ill. App. Ct. 1998) ("Truth is a defense to a defamation action and, to establish this defense, defendant need only show the truth of the 'gist' or 'sting' of the defamatory material." (citation omitted)). Even though Ho had been appealing her termination at the time, *see* Second Am. Compl. ¶ 39(a)-(c)—and Lehner did not disclose this to the recruiter—Lehner's statement that she had been discharged by the company was still, at the very least, substantially true. Thus, Abbott cannot be liable for that part of Lehner's statement.

Nor is Abbott liable for the second part of Lehner's statement (that Ho was coded as not eligible for rehire). Ho claims that this is false because she was eventually coded in Abbott's retirement benefits system as "retirement eligible." Second Am. Compl. ¶ 39(c); R. 32-1, Pl.'s Exhs. at 33 (Lehner Oct. 9, 2008 email). But even though she was eventually coded as "retirement eligible" after her unsuccessful appeal of her

12

termination, that action was not taken until October 2008. *See* Lehner Oct. 9, 2008 email. So she was not yet coded "retirement eligible" at the time Lehner told the recruiter that she was coded "not eligible for rehire" in September 2008. And more importantly, an ex-employee could very well be eligible for retirement benefits and simultaneously not eligible for rehire; the two corporate codes are not necessarily mutually exclusive. Thus, it is implausible that the second half of Lehner's statement was substantially false at the time it was made. Lehner's statement, as a whole, was not defamatory.

The second (allegedly) defamatory statement was made in December 2008, when Ho attended an Abbott holiday dinner as an Abbott retiree. Second Am. Compl. ¶ 40(a). Despite being invited to the dinner, Ho was asked to leave by Abbott security. R. 32-1, Pl.'s Exhs. at 35 (Ho Jan. 6, 2009 email). In a stairway outside, other security guards told her that they were responding to a phone call from someone claiming that Ho had recently been terminated and that it was illegal for her to be on Abbott property. *Id.* After she explained her retiree status and showed them her invitation, the guards allowed her to rejoin the party. *Id.* Ho alleges that this caller was Pelletier, Second Am. Compl. ¶ 40(a), and contends that this false accusation humiliated and embarrassed her in front of Abbott security and her colleagues. *Id.* ¶ 40.

After Pelletier's statement to Abbott security is again broken up into two parts, the first part (that Ho had recently been terminated) is not defamatory because it was again substantially true: Ho was terminated about three months before the holiday dinner. Second Am. Compl. ¶ 37. But the second part of the statement (that it was

13

illegal for Ho to be on Abbott property) was false. Ho had actually been invited to attend. And Pelletier published this false statement when she called the security guards. So the second part of Pelletier's statement is defamatory (at this stage, at least) and can state a claim if it caused Ho damages.

Ho has plausibly pled that Pelletier's statement caused her damages because it is defamatory on its face. If a statement is defamation *per se*, damages may be presumed and Ho need not plead actual damage to her reputation to recover. *Bryson v. News Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1214 (Ill. 1996) (citation omitted). In Illinois, there are five categories of defamation *per se*: (1) words that impute the commission of a criminal offense; (2) words that impute infection with a loathsome communicable disease; (3) words that impute an inability to perform or want of integrity in the discharge of duties of office or employment; (4) words that prejudice a party, or impute lack of ability, in his or her trade, profession or business; and (5) accusations of fornication or adultery. *Id.* at 1214-15 (citations omitted).

Pelletier's statement imputes that Ho committed a criminal offense (the first category of defamation *per se*). Any imputed crime must be an indictable one, "involving moral turpitude and punishable by imprisonment or death." *Gardner v. Senior Living Sys., Inc.*, 731 N.E.2d 350, 354 (Ill. App. Ct. 2000). Here, Pelletier's call to security that it was illegal for Ho to be on Abbott property is akin to a false report of criminal trespass to the police. And in Illinois, even the mildest form of criminal trespass is a misdemeanor punishable by less than one year of imprisonment. *See* 720 ILCS 5/19-4(b)(1) ("Criminal trespass to a residence . . . is a Class A misdemeanor.");

14

730 ILCS 5/5-4.5-55(a) ("For a Class A misdemeanor . . . [t]he sentence of imprisonment shall be a determinate sentence of less than one year."). Thus, Pelletier's statement to Abbott security that Ho was trespassing constituted defamation *per se.*

Although Pelletier's statement was defamatory, Abbott might not be liable if Pelletier was protected by a common-law privilege to make that statement. A privilege may protect a speaker from liability regardless of the statement's contents. *See Kuwik v. Starmark Star Marketing & Admin., Inc.*, 619 N.E.2d 129, 133 (Ill. 1993). Had Pelletier called the *police* and reported that Ho was trespassing, that statement would have been absolutely privileged (meaning that she could never be liable for defamation for her call). *See Morris*, 911 N.E.2d at 1056. But it is unclear whether Illinois law recognizes a corresponding privilege for calls to private corporate security guards. In any event, Abbott does not specifically raise a privilege defense in its motion to dismiss or in its reply. So absent the defense, Ho need only plead that Pelletier acted negligently in making the defamatory statement. *Kuwik*, 619 N.E.2d at 133 (citation omitted). And at this stage in the litigation, where all well-pled factual allegations are accepted as true and all reasonable inferences are drawn in Ho's favor, her complaint (especially when read in the context of Pelletier's alleged harassment) plausibly pleads that Pelletier was at least negligent in failing to determine whether she was on Abbott

15

premises legally before calling security.[5] Ho's defamation claim concerning Pelletier's statement to security thus survives Abbott's motion to dismiss.

### D. Promissory Estoppel

Finally, Ho brings a promissory estoppel claim against Abbott. To plausibly plead a promissory estoppel claim, Ho must allege that (1) Abbott made an unambiguous promise to her, (2) she relied on that promise, (3) her reliance was expected and foreseeable by Abbott, and (4) she relied on the promise to her detriment. *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 906 N.E.2d 520, 523-24 (Ill. 2009) (citation omitted). And the reliance element of a promissory estoppel claim requires "action or forbearance on the part of the promisee." *Newton*, 906 N.E.2d at 523 (quoting Restatement (Second) of Contracts § 90 (2012)); *see also Quake Constr., Inc. v. Am. Airlines, Inc.*, 565 N.E.2d 990, 1005 (Ill. 1990) (reliance element met when plaintiff "expanded its office space, hired a project manager, secured subcontractors for the project and provided their license numbers to [defendant], and prepared to perform the work required for the project" upon defendant's promise).

Ho's promissory estoppel claim is based on the theory that Abbott's HR policies promised her equal employment opportunities, yet she was still discriminated against by her supervisor. *See* Pl.'s Resp. at 6. Additionally, although Lehner emailed her a

---

[5]The Court notes that further discovery may cast doubt on the viability of this claim because it is understandable why Pelletier would raise the trespass issue with security. *Cf. Haywood v. Lucent Techs., Inc.*, 169 F. Supp. 2d 890, 917 (N.D. Ill. 2001) (at summary judgment, holding that statements to corporate security were entitled to qualified privilege because security has an interest in knowing whether an ex-employee was no longer allowed on the premises). But that is an issue for another day.

confirmation of her eligibility for retirement benefits following her discharge, she was unable to obtain COBRA benefits. *Id.* at 7. But neither of these theories demonstrate "action or forbearance" on her part. As for the first theory, although Ho conclusorily states that she "reasonably relied on [Abbott's] promise," Pl.'s Resp. at 6, she does not plead any facts indicating that she acted or refrained from acting *because of* Abbott's HR policies. For example, she does not plead that the promise of nondiscrimination contained in Abbott's HR policies influenced her to stay at Abbott rather than find a job elsewhere. Nor does she plead that she was originally not going to report the harassment, but was enticed by Abbott's policies to report it and was fired as a result. Instead, she pleads that Abbott's HR policies simply prohibited the discrimination that she complains about, which is not cause for a promissory estoppel claim.

Her second theory fails for the same reason. Any promise that Lehner made to her about COBRA benefits did not plausibly affect her decision to report the harassment or appeal her discharge, especially because she was discharged in August 2008 and Lehner allegedly promised her benefits in October 2008. Second Am. Compl. ¶ 37; Pl.'s Resp. at 7. And to the extent that she argues that she opted to be coded as "retirement eligible" in Abbott's system because Lehner promised that she would receive COBRA benefits, she does not explain how being coded as "retirement eligible" left her worse off than not being coded—remember, she must plead that she relied on a promise *to her detriment*. Therefore, Ho's claim does not meet the elements of promissory estoppel, and it is dismissed with prejudice.

17

## IV. Conclusion

For the reasons stated above, Abbott's motion to dismiss [R. 25, R. 36] is granted in large part and denied only as to the defamation claim based on the alleged statement that Ho was trespassing onto Abbott's property.

                           ENTERED:

                           s/Edmond E. Chang
                         Honorable Edmond E. Chang
                         United States District Judge

DATE: March 31, 2013