LI-HUA OLIVIA HO,                    )
                                     )
            Plaintiff,               )        No. 11 C 09257
                                     )
      v.                             )
                                     )        Judge Edmond E. Chang
ABBOTT LABORATORIES,                 )
                                     )
            Defendant.               )

## MEMORANDUM OPINION AND ORDER

Plaintiff Li-Hua Olivia Ho brought this lawsuit *pro se* against Defendant Abbott Laboratories, alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*[1] Ho alleges that she was subjected to harassment by her supervisor, and eventually fired, because of her race (Asian) and age (over forty). R. 32, Second Am. Compl.[2] ¶¶ 26-27, 29-34. Ho further alleges that Abbott retaliated against her for complaining about discrimination. *Id.* ¶¶ 35-38. In addition to her Title VII and ADEA claims, Ho alleges a state-law claim for defamation arising from a statement made by her supervisor to Abbott security after Ho's firing. *Id.* ¶¶ 40-42; *see also* R. 79, Mar. 31, 2013 Order at 11-16 (dismissing Ho's defamation claims in part). Abbott now moves for summary

---

[1] The Court has subject matter jurisdiction under 28 U.S.C. § 1331, and supplemental jurisdiction over Ho's state-law claim under 28 U.S.C. § 1367.

[2] Although the complaint is entitled "Third Amended Complaint," it is really the Second Amended Complaint. *See* R. 38, June 4, 2012 Minute Entry.

judgment on all claims. *See* R. 125, Def.'s Mot. Summ. J. at 1-2.[3] For the reasons discussed below, Abbott's motion for summary judgment is granted.

# I. Background

In deciding Abbott's motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party.[4] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ho began full-time work at Abbott in 1996. DSOF ¶ 2. In late 2005, she was promoted to the position of CMC Quality Engineer in Abbott's Quality Assurance Department. PSOF ¶ 17. At the time of her promotion, Ho was 51 years old. DSOF ¶¶ 1, 4. As a Quality Engineer, Ho first reported to Richard "Ty" Hickman, whom she considered to be a fair manager. *Id.* ¶¶ 6, 20. Under Hickman, Ho received "Achieved Expectations" ratings in her performance reviews. PSOF ¶ 18; DSOF ¶ 18. In late summer 2007,

---

[3]Citation to the docket is "R." followed by the entry number and, when necessary, the page/paragraph number. Citations to the parties' Local Rule 56.1 Statements of Fact are "DSOF" (for Abbott's Statement of Facts) [R. 127]; "PSOF" (for Ho's Statement of Additional Facts) [R. 151 at 18-28]; "Pl.'s Resp. DSOF" (for Ho's response to Abbott's Statement of Facts [R. 151 at 1-17]); and "Def.'s Resp. PSOF" (for Abbott's Response to Ho's Statement of Additional Facts) [R. 158], followed by the paragraph number. *See also* R. 154, Dec. 5, 2013 Minute Entry (holding that Ho's supplemental responses [R. 150, 151] to Abbott's motion for summary judgment replaced her initial responses [R. 135, 137]).

[4]Ordinarily, the source of factual citations when evaluating a motion for summary judgment is the non-movant's Local Rule 56.1 fact statements. But Ho, who is representing herself *pro se*, provides only a few factual citations to the record in her filings, and often, the record citations do not support her asserted facts. Ho was provided with the Local Rule 56.2 notice to *pro se* litigants. R. 134, Notice to *Pro Se* Litigant. Ho is well-educated and capable of complying with Rule 56 and Local Rule 56.1, *see* Pl.'s Resp. to DSOF ¶ 1 (detailing Ho's education background); *see also Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("[E]ven *pro se* litigants must follow rules of civil procedure."), so the Court will apply Local Rule 56.1's requirements to her filings. In evaluating the factual record, the Court credits Ho's factual assertions when it can find support for them, or when they are admitted by Abbott. Otherwise, the Court is forced to rely on Abbott's portrayal of the facts (again, when supported by the record). Thus, although the Court has viewed the evidence in the light most favorable to Ho, many of the record citations are to Abbott's statement of facts.

Ho began reporting to Suzette Pelletier. DSOF ¶ 7. According to Abbott, Pelletier understood (based on feedback that Hickman provided to Pelletier during Pelletier's take-over of Ho's department) that Hickman told Ho several times during the year that Ho was not performing adequately. *Id.* ¶ 21. Based on this understanding, Pelletier told Ho in October 2007 that she was "Partially Achieving" expectations. *Id.* ¶ 22.[5] Several months later, Pelletier gave Ho a written warning for "Failure to Follow Standard Operating Procedures," which Ho protested. *Id.* ¶ 23; PSOF ¶¶ 25-26. Pelletier and Hickman then gave Ho her 2007 performance assessment, in which she was given a "Partially Achieving" rating. DSOF ¶ 24. Ho refused to sign the assessment and drafted a rebuttal. *Id.* ¶ 25; Pl.'s Resp. to DSOF ¶ 25.

After giving Ho the "Partially Achieving" performance review, Pelletier put Ho on a "Coaching & Counseling Plan." PSOF ¶ 27; DSOF ¶ 26. This plan established several goals for Ho, including batch-record review training. DSOF ¶ 28; Pl.'s Resp. to DSOF ¶ 28. At least two other Quality Engineers who reported to Pelletier also participated in batch-record review training. R. 143-1, Pl.'s Exh. 40, Batch Record Review Materials at 13 (stating that Matt Krumrai and Lance Leech

---

[5]Ho disputes DSOF ¶ 22, Pl.'s Resp. to DSOF ¶ 22, but her record citations and explanation do not support her denial. Ho does not seem to dispute that Pelletier told her she was not meeting expectations; Ho instead contends that Pelletier was wrong to do so. In support of her position, Ho cites to her own deposition, in which she testifies that Pelletier told her she was partially achieving expectations. S*ee* R. 127-1, Def.'s Exh. 1, Ho Dep. at 80:23-81:5. But the additional pages that Ho cites reinforce that Pelletier had this conversation with Ho. *Id.* at 94:1-95:14. Because Ho's explanation and record citation fail to support her dispute of the statement of fact, DSOF ¶ 22 is deemed admitted. *See Cichon v. Exelon Generation Co.*, 401 F.3d 803, 808 (7th Cir. 2005) (holding that opposition to a statement of material facts "with citations to portions of the record that fail[ ] to support [plaintiff's] denials" is a violation of Local Rule 56.1); *Smith v. Lamz*, 321 F.3d 680, 682 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission.").

completed batch-record review training) (the exhibit is filed under seal, but not due to the factual proposition disclosed by this Opinion); *see also* DSOF ¶ 8 (identifying Krumrai and Leech as Quality Engineers). Ho failed her first attempt at the batch-record review test. DSOF ¶ 31.[6]

Next, Pelletier gave Ho a "Performance Improvement Plan," which stated that Ho was expected to retake the batch-record review test and to pass it with a score of 100 percent. *Id.* ¶ 32.[7] Ho received training on the batch-record review process from Larry Bonk. *Id.* ¶ 33.[8] During training, Bonk showed Ho screenshots of

[6] Ho disputes that she failed her first attempt at the batch-record review test. Pl.'s Resp. to DSOF ¶ 31. Her record citations, however, do not support her denial. In her deposition, Ho admitted that she failed her first attempt. Def.'s Exh. 1, Ho Dep. at 288:4-22. In her response to DSOF ¶ 31, Ho does not present any evidence that she did not fail, only that she believes the test was in violation of Abbott's internal policies. Pl.'s Resp. to DSOF ¶ 31. Because Ho's record citations again fail to support her dispute of Abbott's statement of fact, DSOF ¶ 31 is admitted *See Cichon*, 401 F.3d at 808; *Smith*, 321 F.3d at 682.

[7] Again, Ho disputes DSOF ¶ 32, Pl.'s Resp. to DSOF ¶ 32, but her record citations do not support her denial. Ho disputes DSOF ¶ 32 without explanation, despite the fact that she admitted to receiving the Performance Improvement Plan in her deposition. Def.'s Exh. 1, Ho Dep. at 293:17-23. Some of the materials that Ho cites in support of her denial are not in the record before the Court. She cites to PSOF ¶¶ 50, 51, and 52, but her statement of additional facts ends at PSOF ¶ 40. In Ho's earlier filings, which were replaced by her amended filings, *see* Dec. 5, 2013 Minute Entry, she includes paragraphs labelled 50, 51, and 52. R. 137. Those paragraphs correspond with PSOF ¶¶ 35, 36, and 37 in her operative filing. *Compare* R. 137 ¶¶ 50-52, *with* PSOF ¶¶ 35-37. None of these paragraphs suggest that Ho did not receive the Performance Improvement Plan. *See* PSOF ¶¶ 35-37. Nor do the exhibits that Ho cites support the contention that she did not receive the plan. R. 142, Pl.'s Exh. 35, Performance Management Guide (providing a general outline of when to use Performance Improvement Plans, with no information on whether such a plan was given to Ho); Pl.'s Exh. 40 (collecting documents about batch-record review training) (filed under seal). Finally, Ho cites generally to her deposition, in which she admits to receiving the plan. Because Ho's denial is not supported by her record citations, DSOF ¶ 32 is deemed admitted. *See Cichon*, 401 F.3d at 808; *Smith*, 321 F.3d at 682.

[8] Ho disputes DSOF ¶ 33. Pl.'s Resp. to DSOF ¶ 33. Her explanation and record citation do not support the denial. She cites to substantially the same material that she cited to dispute DSOF ¶ 32, and the citations fail to support her denial for the same reasons. *Id.* (citing PSOF ¶ 51, 52; Pl.'s Exhs. 35, 40). She also cites to her deposition, in which she testifies that Bonk trained her. Def.'s Exh. 1, Ho Dep. at 238:3-21 (stating that Bonk trained her); Pl.'s Resp. to DSOF ¶ 33 (citing Def.'s Exh. 1, Ho Dep. at 240:20-243:19). The

her mistakes. *Id.* ¶ 34.[9] Bonk gave the screenshots to Ho so that she could make copies, but Ho later refused to return the screenshots. *Id.*; Def.'s Exh. 1, Ho. Dep. at 253:3-256:18, Exh. 21. After this incident, Bonk told Pelletier and Catherine Moore, the Associate Director of Quality Assurance Operations, that he did not feel comfortable training Ho anymore. DSOF ¶ 34. Ho took the batch-record review test again, and Abbott claims that Ho failed her second attempt. *Id.* ¶ 37.

Nitorshi Wilson, a Senior Specialist in Employee Relations, reviewed the circumstances surrounding Ho's failure of the batch-record review tests and the screenshot incident. *Id.* ¶ 43.[10] Wilson determined that Ho's employment should be terminated based on her failure to pass the batch record review test and her destruction of the screenshots. *Id.* ¶ 44.[11] In August of 2008, Pelletier and Moore told Ho that Abbott made the decision to fire her. *Id.* ¶ 46; Pl.'s Resp. to DSOF ¶ 46.

Several months after she was fired, Ho was invited to attend a holiday party for retired Abbott employees. DSOF ¶ 66. At the party, Ho was approached by

---

[9]Ho disputes DSOF ¶ 34. Pl.'s Resp. to DSOF ¶ 34. Again, Ho's record citations do not support the dispute. *Id.* (citing PSOF ¶¶ 51, 52; Pl.'s Exhs. 35, 40). Nor do Ho's citations to her deposition support her denial. The portions that Ho cites do not contest that Bonk showed Ho screenshots. Def.'s Exh. 1, Ho Dep. at 304:22-306:8. DSOF ¶ 34 is therefore admitted. *See Cichon*, 401 F.3d at 808; *Smith*, 321 F.3d at 682.

[10]Ho disputes DSOF ¶ 43, Pl.'s Resp. to DSOF ¶ 43, but her record citations do not support the denial. Ho's dispute does not deny that Wilson reviewed the incident; it states that Abbott policy required a written separation agreement. *Id.* Her cited materials do not present any evidence that Wilson did not review the batch record review incident. *Id.* (citing PSOF ¶¶ 50-52; Pl.'s Exhs. 35, 40). DSOF ¶ 34 is deemed admitted. *See Cichon*, 401 F.3d at 808; *Smith*, 321 F.3d at 682.

[11]Ho disputes DSOF ¶ 44 without explanation, citing again to material that does not support her denial. Pl.'s Resp. to DSOF ¶ 44 (citing PSOF ¶¶ 51-52; Pl.'s Exhs. 35, 40). DSOF ¶ 44 is therefore deemed admitted. *See Cichon*, 401 F.3d at 808; *Smith*, 321 F.3d at 682.

additional pages to which Ho cites do not contest that Bonk trained Ho. DSOF ¶ 33 is deemed admitted. *See Cichon*, 401 F.3d at 808; *Smith*, 321 F.3d at 682.

Abbott security guards, who, according to Ho's contention, had been told that Ho was a terminated employee and that it was illegal for Ho to be on the premises. *Id.* ¶ 68; R. 132, Lehner Decl. Exh. M, Jan. 6, 2009 Ho email to Lehner at AHO 002137 ("[T]wo men from [the] security department told me they were on duty responding to a phone call from someone claiming that I was terminated the very last Friday and that it was illegal for me to be [on] Abbott property."). When Ho showed the security guards her invitation to the party, she was allowed to remain on the premises. Lehner Decl. Exh. M at AHO 002137. Ho sent an email to Abbott Human Resources about the incident, in which she said that she planned to file a defamation charge. *Id.* A few months later, Ho filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). R. 32-2, Second Am. Compl. Exh. B. After the EEOC issued a right to sue letter, Ho filed this lawsuit against Abbott, alleging race and age discrimination, retaliation, and defamation. R. 1, Compl; *see also* Mar. 31, 2013 Order (dismissing Ho's other claims).

## II. Standard of Review

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550

U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only competent evidence of a type otherwise admissible at trial, *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

Abbott argues that it is entitled to summary judgment on Ho's remaining claims, which are for race discrimination, age discrimination, retaliation, and state-law defamation. *See* Def.'s Mot. Summ. J. The Court will discuss the race and age discrimination claims together and address the remaining arguments in turn.

### A. Race and Age Discrimination

In employment discrimination cases, the central issue is generally the motivation of the person who made the adverse employment decision. *See, e.g., Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013). Ho does not meaningfully dispute that Wilson (the Senior Specialist in human resources) made the ultimate decision to terminate her. *See supra*, notes 10-11. Nor does Ho allege

that Wilson had a discriminatory animus. Ho instead believes that Pelletier and Moore were discriminating against her based on her age and race. *See* R. 136, Pl.'s Resp. Br. at 5; R. 150, Pl.'s Supp. Resp. at 3.

Even if Wilson did not have discriminatory motives, Ho could still prevail if a biased supervisor exerted influence over Wilson's decision. *Rozskowiak v. Village of Arlington Heights*, 415 F.3d 608, 613 (7th Cir. 2005). This is the "cat's paw" theory of employment discrimination. *Brewer v. Board of Trustees of University of Illinois*, 479 F.3d 908, 917-18 (7th Cir. 2007). Under this theory, "if a supervisor performs an act motivated by a discriminatory or retaliatory animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable." *Hicks v. Forest Preserve Dist.*, 677 F.3d 781, 790 (7th Cir. 2012) (citing *Staub v. Proctor Hosp.*, 131 S.Ct. 1186, 1194 (2011)) (internal quotation marks and alterations omitted). A supervisor's discrimination may be the proximate cause of an employment decision "where the party nominally responsible for a decision is, by virtue of her role in the company, totally dependent on another employee to supply the information on which to base that decision." *Brewer*, 479 F.3d at 918. If the alleged discrimination by Pelletier or Moore was the proximate cause of Wilson's decision to terminate Ho, Abbott may be liable under Title VII and the ADEA.

A plaintiff seeking to prove race- or age-based discrimination may use either the direct or indirect method of proof. *Teruggi v. CIT Grp./Capital Fin., Inc.*, 709 F.3d 654, 659 (7th Cir. 2013) (age discrimination); *Coleman v. Donahoe*, 667 F.3d

835, 845 (7th Cir. 2012) (race discrimination). Under the indirect method and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), discrimination may be proven through a burden-shifting framework. *See also Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 326 (7th Cir. 2002) (applying the *McDonnell Douglas* framework to age discrimination claims under the ADEA). First, the plaintiff must establish a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. This requires the plaintiff to show that "(1) she was a member of a protected class; (2) she was meeting her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees not in the protected class were treated more favorably." *Haywood v. Lucent Tech., Inc.*, 323 F.3d 524, 530 (7th Cir. 2003). After the plaintiff has established a *prima facie* case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp.*, 411 U.S. at 802. Finally, if the employer meets this burden, the plaintiff must prove by a preponderance of the evidence that the employer's reasons are mere pretext for discrimination. *Id.* at 804.

There is no meaningful dispute that Wilson based her decision to fire Ho on two grounds: Ho's failure to pass the batch-record review tests and Ho's refusal to return the screenshots. *See supra*, notes 10-11; DSOF ¶ 43-44. Ho argues, however, that the batch-record review tests were improperly imposed on her and that she did not actually fail the second test.[12] PSOF ¶¶ 19-21, 37; Pl.'s Resp. to DSOF ¶¶ 16-17,

---

[12] Ho does not meaningfully dispute that she refused to return the screenshots that Bonk gave her. *See supra*, notes 8-9.

28, 37. Ho believes that Pelletier, motivated by a discriminatory animus, wrongfully imposed the batch-record review training on Ho and lied about Ho failing the second test. Pl.'s Resp. Br. at 8-10. Because Pelletier provided Wilson with much of the information that Wilson used to make her termination decision, Ho could conceivably show that a discriminatory batch-record review process was the proximate cause of Wilson's decision to fire her. *See Brewer*, 479 F.3d at 918. Ho fails, however, to present enough evidence for a reasonable jury to find that the creation, administration, and application of the test to her were the product of discrimination.

Ho first argues that batch-record review was not included in her "Core Job Responsibilities" and therefore the test of that skill was improperly imposed on her. PSOF ¶¶ 19-21; Pl.'s Resp. to DSOF ¶¶ 28-29, 32. Although it might be true that Ho's "core" job description did not include batch-record review, Ho cannot show that Abbott's decision to give her batch record review training was based on age or race discrimination. Two other Quality Engineers, Matt Krumrai and Lance Leech, were also required to participate in batch-record review training. Pl.'s Exh. 40 at 13 (the exhibit is filed under seal, but not due to the factual proposition disclosed by this Opinion); DSOF ¶ 8[13] (identifying Krumrai and Leech as Quality Engineers). Ho does not argue that Krumrai and Leech were in the protected classes or were also being discriminated against. *See* Second Am. Compl. Exh. B at 9 (identifying

---

[13]Ho disputes DSOF ¶ 8 in its entirety, but only includes an explanation and record support regarding Nicholas Gallo, the employee that Ho believes replaced her. Because her dispute does not include any reference to employees listed in DSOF ¶ 8 other than Gallo, the fact is deemed admitted with respect to all facts addressing other employees.

Krumrai and Leech as white men in their 30s). Because other Quality Engineers outside the protected classes also took the batch-record review tests, Ho cannot show that requiring her to take the batch-record review tests was discriminatory.

Ho also argues that the answer key to her second batch-record review test was switched, which made it appear that she had failed the test when she actually did not fail. PSOF ¶ 37.[14] To support this argument, Ho provides a table that purports to show that she took the same test as other employees, but was graded based on a different answer key. *Id.*; *see also* Pl.'s Exh. 40 (the exhibit is filed under seal, but not due to the factual propositions disclosed by this Opinion). Despite the Court's best efforts to puzzle out support for Ho's contention in her supporting documents, Ho has failed to present a genuine issue of material fact here. Ho identifies several pages as the "Standard" batch-record review test. PSOF ¶ 37 (identifying AHO 004382, 004383, 004385, and 004393 as "Standard BRR Test"). She also identifies several pages as her second test., *id.* (identifying AHO 004545, 004546, 004548, and 004556 as "Ho's BRR test"), though only one of the identified pages is in the record. Pl.'s Exh. 40 at 10. Because a single page from the "Standard" test and a page from Ho's test match, Ho asserts that the tests were the same. *See id.* at 4, 10. Ho then identifies one page has her answer key and another two pages as the "Standard" answer key. PSOF ¶ 37 (identifying AHO 004485 as Ho's answer key and AHO 004358-59 as the "Standard" answer key). Ho concludes

---

[14] In support of this statement, Ho cites to her Exhibit 46. Ho only provided the Court with exhibits through 41. *See* R. 155-1, Pl.'s Revised Exh. List. Ho's Exhibit 40 seems to best support her statement of facts, and it includes several of the referenced bates-numbered documents (the remainder do not appear anywhere in her exhibits). The Court assumes that Ho made a typographical error and meant to cite to exhibit 40.

that because the answer keys are different, her answer key was switched to cause her to fail. *Id.*

The cited documents do not support this conclusion. The tests that Ho identifies are all dated March 18, 2008. Pl.'s Exh. 40 at 2-4, 10-11. Ho took her first batch-record review test in June 2008, DSOF ¶ 31, so the cited pages could be from either her first or second test. Abbott does not dispute that the first tests were the same; but Abbott does claim (with record support) that the second tests were modified based on the mistakes made in the first test, specifically tailored to the particular employee who was taking a second test. DSOF ¶ 41. Even assuming that the pages are from the second test, a single matching page is not sufficient to show that the entire tests were the same. Indeed, the batch-record review tests were much longer than the excerpts presented in the record. *See* Pl.'s Exh. 40 at 2-4, 10-11 (suggesting the test is 66 pages long); PSOF ¶ 37 (stating that the bates ranges of the full tests are more than one hundred pages long). At best, the documents that Ho cites—at least those that are available in the record—show that a single page of her second batch-record review test was the same as a page in the "Standard" test. Even accepting that the answer keys are different, this is not enough to demonstrate that Ho's answer key was switched. Ho's record citations do not create a genuine dispute of fact that the test was administered in a discriminatory fashion.

Because Ho cannot demonstrate that the creation, administration, and application of the batch-record review test to her were discriminatory, she cannot establish a *prima facie* case of discrimination under the indirect method. First, she

cannot show that she was meeting Abbott's legitimate job expectations. Though the batch-record review training might not have been one of her "core" job responsibilities, it was required of her by her supervisor. Ho has presented no genuine dispute to resist the conclusion that she failed to meet this goal. Next, Ho has not pointed to another similarly situated individual outside the protected class who was treated more favorably. A similarly situated individual is someone who is "directly comparable to [Ho] in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). Wilson relied on Ho's batch-record review performance and Ho's refusal to return the screenshots in making her employment decision. Ho does not identify any other Abbott employees who failed the second batch-record review test or refused to return documents to a trainer. Because Ho cannot show that she legitimately met Abbott's job expectations or show that similarly situated employees got better treatment, Ho cannot establish a *prima facie* case of discrimination.

Even if Ho could establish a *prima facie* case, she has not shown that Abbott's legitimate, nondiscriminatory reasons for terminating Ho were pretextual. To show pretext, Ho must show that Wilson's explanation for firing her was a lie. *Hobbs v. City of Chicago*, 573 F.3d 454, 461 (7th Cir. 2009). As discussed above, Ho cannot provide any record support for her allegations that the batch-record review training program was a pretext for Pelletier's discriminatory motives. Other employees with Ho's job description who were not in the protected classes participated in batch record review training, and there is no evidence that Ho's second test was doctored

to fail her. Ho has not put forward any other evidence that Wilson's articulated reasons for firing Ho, the batch-record review test and refusal to return the screenshots, were a lie. Ho cannot sustain a claim for discrimination under the indirect method.

Under the direct method of proof, the plaintiff can meet her burden by presenting either direct or circumstantial evidence. *Teruggi*, 709 F.3d at 659; *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 720 (7th Cir. 2005). "Direct evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Rudin*, 420 F.3d at 720 (internal quotation marks and citation omitted). On the other hand, circumstantial evidence allows the trier of fact "to infer intentional discrimination by the decisionmaker." *Rogers*, 320 F.3d at 753. This may include evidence of "(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action. *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011).

The undisputed facts do not support a claim of discrimination under the direct method. Ho admits that no one at Abbott made any negative remarks to her about her age. Pl.'s Resp. to DSOF ¶ 9. She can point to only one statement about her race, a handwritten note—presumably written by Pelletier—that says another

Abbott employee believed that Ho might be joining an "Asian class action." R. 141-6, Pl.'s Exh. 30, Apr. 9, 2008 Pelletier Notes at 1; *see also* Pl.'s Resp. to DSOF ¶ 10; DSOF ¶ 10.[15] This statement does not give rise to an inference of discriminatory intent for two reasons. First, Ho has not alleged that this remark proximately caused Wilson's termination decision. Ho presents no evidence that Wilson even heard or knew of the "Asian class action" comment. Second, Pelletier's note is an isolated stray remark and is thus "insufficient to establish that a particular decision was motivated by discriminatory animus." *Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 721 (7th Cir. 2008). Ho offers no evidence of suspicious timing, ambiguous statements or behavior toward other employees in the protected group, or evidence that similarly situated employees received better treatment. And, as discussed above, she fails to show that Abbott's legitimate reason for terminating her was pretextual. Ho therefore cannot establish a claim of race or age discrimination under the direct method.

As this Court described in *Luster-Malone v. Cook Cnty.*, No. 11 C 09227, 2013 WL 6508070, at *3 (N.D. Ill. Dec. 12, 2013), the direct/indirect-method framework has "taken on a life of its own" since its creation. Numerous corollaries and rules have sprung forth from courts' application of the framework over time, resulting in confusion and, too often, the imposition of a too-high burden on plaintiffs. This has

---

[15]In her dispute of DSOF ¶ 10, Ho fails to cite to any record evidence to support her contention that several other Abbott employees made remarks alleging that Ho was coordinating an "Asian class action." Because Ho's response does not contain adequate citations to the record, DSOF ¶ 10 is deemed admitted. *See Cady*, 467 F.3d at 1059 (holding that a District Court has discretion to use the movant's statement of facts when the non-movant fails to adequately cite to the record).

led to a growing consensus in the Seventh Circuit for replacing this framework: a majority of active-service Seventh Circuit judges have opined that the direct/indirect-method analytical structure has done more harm than good, and should be replaced with the more straightforward question of "whether a reasonable jury could infer prohibited discrimination." *Hitchcock v. Angel Corps., Inc.* 718 F.3d 733, 737 (7th Cir. 2013); *see also Coleman*, 677 F.3d at 863 (Wood, J., concurring). By simplifying the approach, the Seventh Circuit sought to return to the "statutory question of discriminatory causation," *see Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 680 (7th Cir. 2012), thereby avoiding "the confusing 'snarls and knots' of this ossified direct/indirect paradigm," *Hitchcock*, 718 F.3d at 737 (quoting *Coleman*, 677 F.3d at 863).[16] Still, the Seventh Circuit has yet to definitively jettison all application of the direct/indirect-method framework. *See Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 979 (7th Cir. 2014) (noting that the question is "ultimately" the reasonable-jury analysis of *Hitchcock*, but nevertheless applying the direct/indirect framework in full); *Tate v. Ancell*, USCA Nos. 11-3252, 12-2694, 2014 WL 186353, (7th Cir. Jan. 17, 2014) (unpublished).

Even granting all inferences in Ho's favor, no reasonable jury could find that Abbott discriminated on Ho based on her race and age. Ho claims that her bad reviews, counseling plans, and training were all imposed on her unfairly, but she does not present any evidence that these unfair actions were due to her age or race. *See Brown v. Advocate South Suburban Hosp.*, 700 F.3d 1101, 1106 ("Perhaps their

---

[16]As discussed in *Luster-Malone*, this approach is faithful to both Rule 56 and *McDonnell-Douglas*. *Luster-Malone*, 2013 WL 6508070, at *3 (N.D. Ill. Dec. 12, 2013).

supervisors' criticisms were unfair … but there is no evidence that they were unfair *because they were motivated by race*, as Title VII forbids."); *Robinson v. PPG Indus., Inc.*, 23 F.3d 1159, 1164 ("Misguided and unfair personnel assessments are not actionable under the ADEA unless age played a role in the evaluation."). The only evidence Ho has presented that anyone discriminated against her based on protected characteristics is a stray remark about joining an "Asian class action." She provides almost no link between the adverse employment action and her race or age. It would be asking too much of a reasonable jury to infer discriminatory motive based on single comment—not even by the decisionmaker—referring to Ho's race. Abbott is therefore entitled to summary judgment on Ho's discrimination claims.

## B. Retaliation

Ho also alleges that Abbott retaliated against her. Second Am. Compl. ¶¶ 35-38. It is not clear from Ho's Second Amended Complaint whether she alleges retaliation under Title VII or the ADEA, but summary judgment is appropriate in either case. As a preliminary matter, Ho seems to allege that Abbott retaliated against her after applying for a transfer to an Abbott position in California. Second Am. Compl. ¶¶ 35-38. Both Title VII and the ADEA only protect against adverse employment decisions made because the employee engaged in statutorily protected activity. *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012) (Title VII); *Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 657 (7th Cir. 2012) (ADEA). Statutorily protected activity includes protesting or opposing unlawful discrimination. *See Huang v. Continental Cas. Co.*, 754 F.3d 447, 451 (7th Cir.

2014). Attempting to transfer within the company is not a protected activity under either statute.

Even if Ho had alleged that she was retaliated against for making complaints of unlawful discrimination, her retaliation claim would fail. Claims of retaliation under Title VII and the ADEA follow the same framework as claims for discrimination. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 662 (7th Cir. 2006) (Title VII) (applying the direct/indirect framework to retaliation under Title VII); *Lafayette Bank*, 674 F.3d at 657-58 (applying the direct/indirect framework to retaliation under the ADEA). For the same reasons discussed above, Ho cannot establish a claim of discrimination under either the direct or indirect method.

## C. Defamation

In addition to her discrimination and retaliation claims, Ho alleges that Pelletier defamed Ho to Abbott Security after Ho's firing. Second Am. Compl. ¶ 40; *see also* Mar. 31, 2013 Order at 11-16 (dismissing the majority of Ho's defamation claim). Ho claims that Pelletier told Abbott security that it was illegal for Ho to be on Abbott property. Lehner Decl. Exh. M at AHO 002137. Because this statement would impute that Ho committed an indictable criminal offense, it could constitute defamation *per se*. *See* Mar. 31, 2013 Order at 14-15. Abbott now moves for summary judgment on Ho's defamation claims on three grounds. Abbott argues that Ho's claim is time-barred, that Ho has not presented competent evidence that Pelletier made the allegedly defamatory statement, and that, even if Pelletier made the statement, she is protected by qualified privilege. R. 126, Def.'s Br. at 13-15.

Abbott is correct that Ho's defamation claim is not timely. In Illinois, the statute of limitations for defamation claims is one year from the publication of the defamatory statement. 735 ILCS 5/13-201; *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 334 N.E.2d 160, 161 (Ill. 1975). In some circumstances, however, the limitations period may be tolled until the plaintiff knew or should have known of the defamatory statement (this is known as the "discovery" rule). *See Blair v. Nev. Landing P'ship*, 859 N.E.2d 1188, 1195 (Ill. 2006) (noting the statute of limitations may be tolled if "the publication was hidden, inherently undiscoverable, or inherently unknowable"); *Tom Olesker's*, 334 N.E.2d at 164. Even assuming that Ho's claim would benefit from the discovery rule, the claim is untimely. On January 6, 2009, Ho sent an email to Christina Lehner, Abbott's Business Human Resources Director, relaying the incident at the holiday party and stating that she intended to file a defamation claim. Lehner Decl. Exh. M at AHO 002137; *see also* Pl.'s Resp. to DSOF ¶ 68 (admitting that she sent this email to Lehner). At the latest, Ho's claim accrued in January 2009. Ho did not file her initial complaint until December 29, 2011, long after the statute of limitations had expired in January 2010. *See* Compl. Ho's earlier-filed EEOC complaint does not save her, as an EEOC charge will not toll the statute of limitations on a separate and independent state-law claim. *See Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992) (citing *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454 (1975)).

Even if Ho's claim were not time-barred, Ho has not presented any competent evidence of the defamatory statement. On summary judgment, a court may only consider admissible evidence. *See Gunville*, 583 F.3d at 985. The only evidence that Pelletier said Ho's presence on Abbott's premises was *illegal* is Ho's January 2009 email to Lehner. *See* Lehner Decl. Exh. M at AHO 02137. *Cf.* Second Am. Compl. ¶ 40 (alleging only that Pelletier told the guards Ho had been terminated and should be escorted off the property); Pl.'s Supp. Resp. at 5 (arguing that Pelletier "stated that Ho was terminated the very last Friday and tried to have her evicted from Abbott property"); Def.'s Exh. 1, Ho Dep. at 357:16-359:2 (saying only that Pelletier called to get Ho evicted from Abbott's property); R. 132, Lehner Decl. Exh. N, Dec. 10, 2008 Activity Report (stating that Pelletier "reported that a terminated employee (Olivia Ho) was on-site"). Thus, the only account of the potentially defamatory portion of the statement is Ho's own account in January 2009. But Ho did not speak to Pelletier on the day of the holiday party. DSOF ¶ 67; Def.'s Exh. 1, Ho Dep. at 357:16-359:11.[17] She learned of Pelletier's allegedly defamatory statement from Abbott security guards. *See* Def.'s Exh. 1, Ho Dep. at 358:1-359:2; Lehner Decl. Exh. M at AHO 02137. Her account is inadmissible hearsay and thus

---

[17]Although Ho disputes DSOF ¶ 67, her record citations do not support the denial. In her deposition, Ho testified that she did not speak to Pelletier on the day of the party. Def.'s Exh. 1, Ho Dep. at 358:1-3. In disputing DSOF ¶ 67, Ho does not present any evidence that she actually did speak to Pelletier, but instead alleges that "Pelletier bragged to Abbott colleague[s that] she called security to evict Ho." Pl.'s Resp. to DSOF ¶ 67. In support of this statement, she cites other portions of her deposition, none of which suggest that Ho spoke to Pelletier on December 10, 2008. *See id.* In fact, Ho's record citations include the portion of the deposition in which she admits that she did *not* speak to Pelletier. *See id.* Because Ho's record citations fail to support her dispute of Abbott's statement of fact, DSOF ¶ 67 is deemed admitted. *See Cichon*, 401 F.3d at 808; *Smith*, 321 F.3d at 682.

"not enough to preclude summary judgment." *Haywood*, 323 F.3d at 533 (quoting *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 925 (7th Cir. 2001)) (holding that an employee's testimony that "another employee told her about information received from the employee's superiors in corporate security" was inadmissible hearsay on multiple levels). Statements by Pelletier herself might be admissions of a party-opponent, but Ho's version based on the security guards' version is inadmissible. *See id.* There is therefore no competent evidence that Pelletier made the defamatory statement.

Finally, even if Pelletier had made the statement, she would be protected by qualified privilege. "A defamatory statement is not actionable if it is privileged." *Solaia Tech., LLC v. Specialty Publ'g Co.*, 852 N.E.2d 825, 842 (Ill. 2006). In Illinois, a qualified privilege may exist when an interest of the publisher of the defamatory statement or a third person is involved. *See Haywood v. Lucent Tech., Inc.*, 169 F. Supp. 2d 890, 916 (N.D. Ill. 2001), *aff'd* 323 F.3d 524 (7th Cir. 2003). An employer likely has "a compelling interest to make sure terminated employees [are] no longer allowed on company premises." *Haywood*, 323 F.3d at 533. Without any evidence that Abbott did not have such a privilege or that Pelletier abused the privilege, Pelletier's alleged statements are not actionable. *Id.* This is yet another reason why Abbott is entitled to summary judgment on Ho's defamation claim.

### IV. Ho's ERISA Claim

Ho's ERISA claim in this case was dismissed without prejudice. Mar. 31, 2013 Order at 7-11. Although Ho's inclusion of the ERISA claim in her summary

judgment responses is not procedurally proper (absent a motion for leave to amend the complaint), this Court agreed to consider whether Ho has presented enough additional evidence to warrant the reinstatement of the claim. R. 167, Feb. 11, 2014 Minute Entry. In her Second Amended Complaint, Ho alleged that she was fired because she would have been laid off a short time later and would have received a severance package. Second Am. Compl. ¶ 23. Because a severance package is a benefit plan under ERISA, *see Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 789 (7th Cir. 1996), firing Ho with the specific intent to avoid paying severance would be an ERISA violation. *See* Mar. 31, 2013 Order at 9-10.

In order to reinstate her ERISA claim, "Ho must plead facts plausibly alleging that Abbott had already selected her to be laid off (and thus would have been eligible for the severance package) but fired her ahead of time to avoid paying her severance." *Id*. Only one of the documents filed by Ho even references the severance package. *See* Pl.'s Resp. Br. at 2, 7. In her brief, Ho identifies "a Separation Benefit Plan" as an ERISA-defined employee benefits plan administered by Abbott. Pl.'s Br. at 2. Later, she states that Abbott fired her "with the specific intent to interfere with benefits," including a "separation package." *Id*. at 7. Nowhere does she suggest that Abbott even had layoffs, let alone that she was selected for these layoffs prior to her firing. Ho's bare references to the severance package are not remotely sufficient to plausibly allege that Abbott fired Ho to avoid paying her severance. Ho's ERISA claim will therefore not be reinstated.

## V. Conclusion

For the reasons discussed above, Abbott's motion for summary judgment is granted.

ENTERED:

_____s/Edmond E. Chang_____
Honorable Edmond E. Chang
United States District Judge

DATE: September 16, 2014